Thank you very much. Your honors, I really think it can't be disputed here that there was a violation of the statute. And the violation was actually aggravated by first a complete lack of warning and second a sitting on rights. The pre-sentence report spoke of restitution to the Crime Victims Fund only. AHCCCS was notified by the government. AHCCCS ignored the government until a month after sentencing. Wasn't your client advised at some point that he could be liable for restitution for medical expenses? Well, the plea agreement indicated that he could be held liable. Did the government provide discovery of medical records to the defense prior to the entry of the plea? The prosecutor at the hearing on the government's motion to reopen restitution indicated that discovery had been provided in the form of medical records. I don't remember if it indicates when it was provided, but it probably was provided before the plea. The problem, your honor, though, is that... Why doesn't that constitute notice to the defendant that he might have to pay for medical expenses? Well, might have to pay and could have to pay is fine. The problem is it also talked about that being done at sentencing. And then the court didn't take advantage of that could have or might have at sentencing. And the restitution the court ordered was the $276 plus for the Crime Victims Fund. That's the problem here. It's not that he... We wouldn't have been complaining if he got restitution ordered at the sentencing hearing. The problem is that it didn't get ordered there and no one told him, hey, this is going to be open down the road. The way the defendant in Dolan was informed, the way the defendant in Cua was informed. That's the problem here, your honor. Not that he didn't have any idea at any point that it might happen at sentencing. The problem is he has a right under the statute to either know at sentencing or know that it's still up in the air. But Mr. Gunn, why would that make a difference to him as far as a prejudice analysis? Because at sentencing, he's already pled guilty. It's too late. I can see your point if at his plea he would have an opportunity to withdraw his plea because... Or he'd be prejudiced if he didn't know about the possibility of the mandatory restitution. But how does this prejudice him that the judge didn't say at sentencing? And by the way, I might impose, I might amend this judgment later and impose additional restitution. Your honor, I think there's prejudice here in two respects. And I'm not sure that prejudice is dispositive or required when there's absolutely no compliance or warning of the statute. But there is prejudice in two ways. One is the prejudice of being given what appeared to be finality in the $276 restitution order and then having that snatched away. The other prejudice is something that Dolan recognized in one of its considerations. One of the reasons Dolan said it was okay to let the time limit slide is that the defendant who's warned that restitution is still up in the air can basically enforce the time limit himself. It made the point that the defendant can enforce the 90 days by saying to the court, hey, you're supposed to do this within 90 days. And if the district court then said, no, I'm going to violate the statute anyway, the defendant could even seek mandamus. The problem is the defendant doesn't have that option as any reason to exercise it anyway, when no one's told him that restitution is still up in the air. So he's also prejudiced in that way. He's basically had his right to enforce the 90 day limit that Dolan recognized taken away from him because no one's told him there's anything else left to be considered. So I think there's prejudice in those two ways. And your honor, I think there has to be some line drawn somewhere. The government's position, as I thought about it, is basically that they could come into court 20 years after sentencing and ask for restitution. And nothing could be done about it by either the defendant or the court. And that that can't be right. The statute draws the 90 day line and what Dolan says, and what the case says, and what the published case implies, is that you can't keep, you know, yeah, the 90 day limit can be overlooked if the defendant decides not to enforce it, and he knows that the issue is still out there. It can't be overlooked. Just willy nilly, you know, anywhere down the road. And that's basically what Mr. Gunn, the only problem I have with your argument is twofold. First of all, the statute is to make them whole from the law. The loss here is pretty clear. As a result of a horrific assault with a deadly weapon by your client, your client knew from the date of the offense that he had committed pretty severe injuries on this victim, for which the victim through the Arizona Medicaid now seeks reimbursement for the costs of medical treatment. And I guess the question is who's being prejudiced here, your client or the victim? Well, if we grant you the relief that you're requesting? Well, the victims being prejudiced, but partly due to its own fault of not responding to the government when the government inquired about whether they wanted restitution, which they apparently, according to the prosecutor at the hearing, very rarely if ever seek. This was a big surprise that they usually don't want to bother. Second, Your Honor, there's a premise in your question that I think I'd respectively at least qualify. And that is that that the interest here is in protecting the victim. That is the, in the words of Dolan, primary interest. But it's not the only interest. Dolan said at page 613, if I could read it, it says the statute seeks speed primarily to help the victims of crime and only secondarily to help the defendant. So there is a secondary interest in the defendant. And I think there's also this this concern about finality is not just the secondary interest trumped the primary interest. That's the question we're wrestling. It should trump the primary interest when the court when no one gives the defendant the court gives no notice at the time of sentencing that there's still restitution up in the air. But what we're saying is the court at least has to tell the defendant, I'm going to keep thinking about this. It's out there. I may not even do it within 90 days. But you can come ask me and make me do it in 90 days if you want, unless I maybe show some good reason for violating the statute. But all we're saying is the defendant has a right to not be left hanging up in the air for 90 days, 180 days, a year, two years, 20 years under the government's Collins posed the question at the very end of the restitution hearing, which was sort of tongue in cheek, but I think I understand the point he was making. And that being that your client doesn't have the resources probably to pay the $273 restitution award, and he probably is never going to be able to pay a $17,000 medical bill. So what are we arguing about here? I mean, is it just purely a question of statutory interpretation without regard to the practical ramifications of the decision? I mean, that cuts two ways. Why is either side arguing about it? But actually, I mean, I don't think we're not talking about $5 million here. I mean, $17,000 if Mr. Delahanty turned his life around and got a good solid blue collar job, he could pay that in payments that and they could be garnishing his salary. And I guess I guess that doesn't offend me as a matter of equity to the victim. Well, it's, it's problematic, Your Honor, because the statute gives the defendant the right to at least get finality if it's not given to him by the court, the statute and Dolan's interpretation of the statute says the defendant can go in there and enforce it. And the defendant doesn't know he has anything to enforce if he's not told restitution is still going to be up in the air. You also have the problem of my second issue here with the letter, not really being anything more than a claim, but I I'm into my rebuttal time. So I'll submit on that. All right, thank you. Mr. Miskell. The employee is Laquan Miskell from the U.S. Attorney's Office in Tucson on behalf of the United States. In the Cienfuegos case, this court held that the procedural requirements of 3664 are not jurisdictional and they are harmless unless the defendant can establish prejudice. The defendant didn't even attempt to establish prejudice in the district court or in his opening brief for that matter. And for that alone, the government should prevail and the victim should be compensated or the order of restitution should stand. Nothing in Dolan, Dolan is basically consistent with Cienfuegos. It certainly is doesn't overrule Cienfuegos. So the court should apply Cienfuegos and affirm the order. The prejudice that the opposing counsel is talking about is inconsistent, actually, with what the both the Supreme Court identified as potential prejudice in these scenarios and what this court in Cienfuegos said. The Supreme Court in Dolan talked about prejudice being something along the lines of the unusual case where the lapse of time prevented the defendant from effectively challenging the restitution. That's certainly not the scenario here. And in Cienfuegos, they made clear that the purpose of the statute wasn't to protect the defendant from drawn out sentencing proceedings or to establish finality, which is kind of what Mr. Gunn's argument is going towards. So because the deadlines are not jurisdictional, because any error was harmless, this court should affirm. So, Mr. Miskell, the cases that you've cited in Dolan, Cienfuegos, the court was considering timing requirements, deadlines. And I think your argument assumes that any other requirements in the statute should be treated the same as a deadline. They're all procedural. So, you know, we review for harmless error or harmlessness if any of them are violated. I don't think the cases actually say that. How do you how do you get to that point to this, to declare that all the other requirements in the statute should just be deemed procedural and non-jurisdictional? Well, Cienfuegos just does use the term procedural aspects. Dolan is specifically talking about the time deadlines, but Cienfuegos talks about procedural aspects. If I may be remembering it incorrectly, I thought the issue dealt with a time deadline. Yeah, I believe that's correct, Your Honor, yes. But in any event, that's essentially what we're talking about here is the timing deadline. The access didn't get the information to the court in time. That's what we're dealing with here. But the government knew that well before sentencing, and they could have sort of invoked the procedures of the first sentence of the statute and said, you know, there's going to be additional or there may be some additional requests for restitution, but it's not ascertainable at this point because we don't have the information and put the court on notice. But they didn't do that. They just did nothing. And that, you know, is that the same as the deadline when they didn't notify the court? And then the issue with the other means of amending the judgment deal with, you know, the further damages, discovering further damages. And I'm not sure that these were discovered, could be considered discovered later when everybody knew that she'd been injured and had medical bills from the outset. I think ultimately, it is ultimately a timing issue. As Mr. Gunn said, there would have been no problem if this information had been presented at the original sentencing. The fact that it was presented late makes it a timing problem. And that's exactly what Sina Flagos and Dolan were dealing with. The defendant certainly was on notice that restitution for medical expenses was in play. It was in the play agreement. And at the change of play hearing, the magistrate judge specifically said, you're required to pay restitution, which includes medical expenses. So the fact that access, as the district judge noted, it takes them a time to process stuff. The defendant shouldn't get a windfall because of that, especially in light of the purpose of the restitution statutes and what this court has held in Sina Flagos and what the Supreme Court held in Dolan. So is there any check on when the government could come back before the court? Mr. Gunn posited the hypothetical that the government comes back 20 years later and says, oh, by the way, here's the medical bills. I mean, what's to stop that? I think the check would be obviously the longer the time period that elapses, the more probable it would be that the defendant could actually establish the kind of prejudice envisioned by this court in the Ninth Circuit. So that would be the limitation. The government would be taking a risk actually. Mr. Miskell, to alert the court once a response was received from Arizona Medicaid. I didn't hear the first part of your question, Judge. Sorry. I thought there was a two month delay between the receipt of the letter, which came after sentencing and noting up the motion before the district court. What's the explanation for that? Well, it appears it's not it's obviously not in the record, but it appears the assistant U.S. attorney was relying on the 60 day provision in the in the statute. But it's we were kind of cutting out there for a moment. I think Judge Tom was asking a question, but I'm not sure you heard it. Yeah, my question was, and the AUSA never bothered to read the statute that I can. I said it's beyond my knowledge, Judge. All right. You don't have to answer that. And and actually, as far as the second defendant, second argument, if in fact there's a problem with the amount of evidence presented, the proper remedy is to remand it so that the court can consider the evidence. Thank you. All right. Thank you, Mr. Miskell. Mr. Gunn, there we go. That's your rebuttal time. Thank you, Your Honor. Two points I'd like to make. First, on the Cienfuegos case, Your Honors, I hope we'll see that that's a very different case. The deadlines that were missed there were basically how far before sentencing the government gave its notice. The defendant did have the notice at sentencing that this is the amount of restitution the government was seeking. So Cienfuegos has nothing to do with the situation where a defendant gets a sentence, gets a certain amount of restitution, and then all of a sudden down the road, they announce, well, we're going to add more. Second, the prejudice that Dolan talked about was not just the example of losing a witness. If you go to pages 615 to 616 of Dolan, it says the following. A defendant who fears the deadline will be or just has been missed can simply tell the court, which will then likely set a timely hearing or take other statutorily required action. And then it says, if necessary, the defendant could seek mandamus. That right is also lost to the defendant when no one tells him that, hey, down the road, we're going to be seeking more restitution. He completely loses his right to try to enforce the 90-day deadline. So that's a second form of prejudice. He loses the right to enforce the deadline, but he does not lose the right to challenge the amount or imposition of additional restitution, does he? That's the purpose of a hearing. Well, but I think, Your Honor, what that passage suggests is that the defendant does have a justifiable interest in being able to get finality on his own by seeking it if it's not given to him on its own by the court. But now we're back to the conundrum that you and I talked about earlier of the secondary interest trumping the primary. Correct. But the point is that passage in Dolan gives recognition to that interest. Well, does it? I mean, as long as there's some due process here and the defendant is fully entitled to a merits hearing on whether or not, A, the restitution award should be amended, and B, if so, what that amount is, I'm having a hard time seeing how the defendant is prejudiced any more than he would have been prejudiced had he raised those arguments earlier at the initial sentencing hearing. Well, he's prejudiced, Your Honor, by first not knowing what he's going to have to pay, and second, not being able to at least get the court to tell him by the deadline in the statute. I would like to know my debt now rather than what it might be 20 years from now or five years from now or two years from now or whatever it might be. And I think that passage in Dolan recognizes that there is an interest in that, but it's secondary enough that we'll leave it up to the defendant to enforce it. But when you don't even warn the defendant, there might be more. The defendant has no way to enforce it because he doesn't know there's anything to enforce. All right. Thank you, Mr. Gunn. I will take this case under submission, and I think I forgot to say the case numbers, the case name, but not the number when we started arguing. It's number 19-10459. Thank you.
judges: Tallman, Bybee, Bade